IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| BENJAMIN ALLEN PADILLA and | § | CASE NO. 04-42708-H2-13 |
| DENISE YVONNE PADILLA | § | |

**MEMORANDUM OPINION, FINDINGS, AND CONCLUSIONS
OVERRULING DEBTORS' OBJECTIONS TO CLAIMS (doc # 97, 98) and
SUSTAINING DEBTORS' OBJECTIONS TO CLAIMS (doc ## 100, 101)**

Debtors filed objections to every unsecured proof of claim filed in this bankruptcy case. The Court has previously ruled on many of those objections *see* doc # 172. The legal conclusions from that ruling are incorporated here by reference. In this opinion the Court rules on the remaining four objections. For reasons set forth below, and by separate written order issued this date, two of the claims are allowed and two are disallowed.

The Court reiterates its conclusions from the prior opinions. Creditors need not file perfect proofs of claim. No proceedings in federal court require a party to meet that burden. Contested matters in the bankruptcy court are civil proceedings that require proof by a preponderance of the evidence, not even proof beyond a reasonable doubt. Proofs of claim are entitled to *prima facie* validity if they "materially" satisfy the requirements of the Federal Rules of Bankruptcy Procedure. The burden to go forward with the evidence then shifts to the debtor. The point is that perfection is not required; preponderance of the evidence, as affected by entitlement (or not) to *prima facie* validity is the standard.

*In re Armstrong*, 320 B.R. 97 (Bankr. N.D. Tex. 2005)[1] established the following requirements for a proof of claim to be entitled to *prima facie* validity:

> ... the creditor must attach an account statement containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges and other fees that make up the balance of the debt, or attach enough monthly statements so that this information can be easily determined. [*Armstrong* at 106.]

If the entity filing the proof of claim is not the same entity shown on the supporting documentation, the claimant must provide evidence that the claim has been transferred to the entity filing the proof of claim. If the necessary evidence is not submitted by the creditor, the proof of claim is not entitled to *prima facie* validity.

---

[1] *See* discussion in Court's prior decision, docket # 172.

A debtor's admissions in bankruptcy schedules are highly relevant. Debtors must honestly fill out the schedules on penalty of criminal prosecution and on penalty of losing a bankruptcy discharge. Advocacy of a document for an improper purpose (such delay or needless increase in litigation costs) and advocacy of a document that counsel has not sufficiently investigated can be a Rule 9011 violation. Although, like the Northern District of Texas, this Court has not previously awarded sanctions for wholesale and thoughtless objections to claims, that possibility exists and increases as the courts define the appropriate parameters of objections to claims.

Creditors' proofs of claim must be complete and must be filed in good faith. False claims are subject to criminal penalties. Claims that do not meet the requirements set out in *Armstrong* and in this Court's prior opinion will not be entitled to favorable presumptions. Deficiencies in appropriate evidentiary materials cannot be cured in counsel's memoranda of authorities.

Failure to Check Box 4

Debtors allege that the claims should be disallowed because claimants failed to check Box 4 on the proof of claim form to indicate that their proofs of claim include interest or other fees. Debtors are correct that claimants did not check Box 4.[2] However, the *Armstrong* court held, and the Court has previously noted, that supplying the most recent account statement(s) is sufficient if those statements disclose recent interest and other charges, which they do in this case. There is no allegation that the failure to check Box 4 caused confusion or any other difficulty. Therefore, the Court declines to disallow a proof of claim merely because claimant failed to check Box 4.

Debtors' Objection (docket # 97) to American Express Travel Related Services Co., Inc. (claim # 11, amended by claim # 26)

AmEx's original proof of claim included a summary of the account in dispute. The summary listed the obligors as Benjamin A. Padilla and PP and D, Inc. The total amount due, according to the summary, is $8,429.45. The summary also states that the account number ends with digits 3009.[3] AmEx filed an amended proof of claim (claim # 26) on March 10, 2006. The amended claim supplements the prior data by providing information about the charges that were made and the delinquency fees that were charged. In addition, AmEx attached copies of the account history showing that the balance owed is $8,429.45.

The Debtors' schedule F (doc # 1) lists a debt to American Express in the amount of $8,429.45 and Debtors' schedules show that the account number ends with "3009." The debt is listed

---

[2] By placing a checkmark in Box 4 claimant represents that "claim includes interest or other charges in addition to the principal amount of the claim." Form 10 has been updated and revised as of October, 2005. Box 4 has been renumbered as Box 5.

[3] Judicial Conference policy, adopted by local rules, prohibit listing more than the last 4 digits.

as a joint debt of Mr. and Mrs. Padilla, and the schedules do not indicate that the debt is disputed, unliquidated, or contingent.[4]

The statements submitted in support of the proof of claim substantially comply with FRBP 3001.  Accordingly, AmEx's proof of claim is *prima facie* valid.  Since Benjamin Padilla's name is on the account, and since Mr. Padilla listed the account in his bankruptcy schedules as a joint debt, the Court concludes that the *prima facie* validity of the account includes Mr. Padilla's personal liability.

At the hearing on May 2, Mrs. Padilla stated that she did not agree to be personally liable on the American Express card.  That statement lacks credibility in light of Mrs. Padilla's sworn schedules which list the debt as a joint obligation.  Regardless, this adjudication does not address whether Mrs. Padilla is liable on the account because of her agreement.  It addresses only whether the debt will be allowed as a claim in the bankruptcy case that Mr. and Mrs. Padilla filed jointly.  Mrs. Padilla's testimony is not sufficient to overcome the *prima facie* validity of the claim.

Mr. Padilla testified that he was employed by PP and D, Inc., that during the course of his employment he was issued an American Express card and that he used that card but that he does not remember ever agreeing to be liable for the amounts charged on the card.  He did not testify that he had never signed such agreement; he merely testified that he did not remember signing a document.  Mr. Padilla's testimony is contrary to his sworn schedules and even if it were not, it is not sufficient to overcome the *prima facie* validity of the claim which is supported by the business records affidavit supplied by AmEx that states "According to the terms of the Account Agreement for this type of account, both the Authorizing Officer [Benjamin Padilla] and the Company are jointly liable for all charges on the account."  (doc # 146, exhibit A, paragraph 5).

Therefore, the objection to the American Express proof of claim (doc # 97) is overruled.

Debtors' Objection (docket # 98) to eCast Settlement Corporation ("eCast") (claim # 12)

eCast filed proof of claim # 12 and then amended that proof of claim with claims ## 22, and 25.  eCast also filed docket # 146, an affidavit of HSBC Bank Nevada.[5]  Read together, these documents (i) assert a claim of $2,503.27, on an account referred to as the "GM Card Account", (ii)

---

[4]  The form for bankruptcy schedules include three columns in which debtors may place an "x" or other mark to indicate that a listed debt is contingent, unliquidated, or disputed.  None of these columns was checked for the American Express debt.

[5]  The Court refers to its prior ruling at this point.  In that prior ruling, the Court recognized, like the Northern District of Texas, that litigation over claims was a new, but burgeoning practice.  Like the Northern District of Texas, the Court articulated the rules and allowed the parties to submit additional documentation.  Although this affidavit should have been attached to the proof of claim, the Court accepts the filing as a separate docket entry as compliance with its order for further submissions.

provide copies of card statements with charges *etc*., (iii) state that Household Bank (SB) NA issued the GM card; (iv) state that the issuer became known as HSBC Bank Nevada, NA and part of HSBC Bank Nevada NA/HSBC Card Services (III) ("Household"), and (v) state that Household sold the GM Card Account # .... 1152 to eCast.

In their bankruptcy schedules, Debtors list "The GM Card", account number ending in 1152, as owing in the amount of $2,549.07.

Debtors argue, in their supplemental objection (doc # 182), that eCast did not provide any evidence of its ownership and right to collect on this debt. The Court disagrees. The assignment provided by eCast in docket # 142 satisfies this requirement.

Therefore, the objection to claim # 12 (as amended by proofs of claim # 22 and 25) is OVERRULED.

Debtors' Objection (docket # 100) to eCast Settlement Corporation ("eCast") (claim # 16)

eCast's claim # 16 was filed on November 8, 2004 alleging a claim of $646.82 owing on a credit card ending with the digits "9502." The attached account summary includes the Debtor's name, the last four digits of the account number, the balance as of filing date, and lists the creditor as eCast Settlement Corporation, Assignee of Citibank, USA, NA. Debtors' bankruptcy schedules do not list a creditor by either eCast or Citibank and do not list an account with the same final four digits, although Debtors' schedules do include a debt to Radio Shack for $602.36. No account number was given by Debtors for the Radio Shack account.

In its memorandum of authorities, eCast argues that Citibank issued a Radio Shack credit card and that its claim as assignee of Citibank is the same claim that Debtors listed as a debt to Radio Shack. eCast filed a business records affidavit that states Citibank "sold, transferred, assigned, conveyed, granted, bargained, set over and delivered to eCast Settlement Corporation, its successor and assigns, good and marketable title to [this] account ...". (doc # 146, exhibit C, paragraph 5). The affidavit also states that Citibank's records indicate that an account was opened that ended with the digits "9502."

However, the affidavit does not state that Citibank is the issuer of the Radio Shack card and the Court can find no other proof in the record that Citibank issued the Radio Shack card. The only reference that the Court can find is in eCast's memorandum of authorities. That is insufficient.

Accordingly, the Court finds that proof of claim # 16 is not entitled to *prima facie* validity. The Court also finds that the Debtors' declaration and testimony are credible. The Court sustains Debtors' objection (doc # 100) to eCast's claim # 16.

Debtors' Objection (docket # 101) to eCast Settlement Corporation ("eCast") (claim # 18)

eCast attached an account summary which includes the Debtors' names, the last four digits of

the account number, "2247", and the balance due of $8,182.54. The account summary also indicates that the account belongs to eCast Settlement Corporation, Successor to Chase Manhattan Bank, USA, NA. The Debtors' schedule F includes a debt of $7,984.86 to Chase Visa and the last four digits of the account number provided by the Debtors matches the numbers on eCast's proof of claim.

eCast amended claim # 18 on March 9, 2006 (claim # 24). Attached to the amended claim are copies of statements for a Chase Platinum Visa credit card. The statements include the last four digits of the account number, the name of the Debtor, the beginning balance on each statement, the daily periodic rate, the average daily balance, the periodic finance charges, the total finance charge, the annual percentage rate, and charges applied to the account. The amended claim also reduced the amount of the claim to $7,984.86, which is the amount provided for in Debtors' schedule F. The account statement (dated of September 3, 2004) states that the new balance is $7,984.86.

eCast also attached an assignment of accounts to the amended proof of claim. The assignment document states

> Chase Manhattan Bank, USA, National Association (the "Seller"), for value received, without recourse, assigns, sells and delivers to eCast Settlement Corporation, (the "Buyer") all rights, title and interest in and to (i) all unsecured consumer line of credit accounts now or formerly known as Chase Advantage Credit Account, Cash Elite, Check Credit, Credit on Demand, or Gold Cardmember Accounts and consumer credit card accounts (the "Accounts") which are described on computer files furnished by the Seller to the Buyer ... (claim # 24).

No proof of assignment of this account number was supplied. The supporting documents prove assignment of some Chase accounts to eCast, but do not include Chase Platinum Visa credit card accounts. eCast has not proved its ownership to the claim. Therefore, the objection to the proof of claim (doc # 101) is sustained.

## CONCLUSION

For the reasons stated above, the Court overrules the Debtors' objections (doc # 97, 98) and sustains the Debtors' objections (doc # 100, 101).

SIGNED   June 29, 2006

_Wesley W. Steen_
WESLEY W. STEEN
UNITED STATES BANKRUPTCY JUDGE